UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

FILED
JUL - 6 2010
PAMELA E. ROBINSON, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JACK KNIGHT, II and ALLISON )
KNIGHT, *Individually and as Parents* )
*and Next Friends of Minor Child*, CK, )
                                      )
   Plaintiffs,                        )
                                      )
      v.                              )  Case No. 10-cv-4039
                                      )
DEAN BECKLER and SMITHWAY             )
MOTOR XPRESS CORP.,                   )
                                      )
   Defendants.                        )

## O P I N I O N and O R D E R

Before the Court are the Motion to Consolidate and the Motion to Dismiss filed by Defendants, Dean Beckler and Smithway Motor Xpress Corp., on May 24, 2010 (Docs. 14 and 16). For the reasons set forth below, the Motion to Consolidate is TAKEN UNDER ADVISEMENT and the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.[1]

### BACKGROUND

On July 30, 2008, Jack Knight, his wife, Susan Knight, and their grandson, C.K., were travelling eastbound on U.S. Route 34 in Henderson County, Illinois, in a 1996 Chevrolet Tahoe. Following them, in another vehicle, were Jack Knight II

---

[1] On June 16, 2010, Defendants filed a reply brief in support of their Motion to Dismiss (Doc. 22). Local Rule 7.1(B)(3) provides that no reply briefs are permitted and Defendants have not sought leave to file the reply brief. Normally, the reply brief would be stricken. However, in light of the burden of proof required of Plaintiff (as indicated below) and that fact that Plaintiff has not objected, the brief will not be stricken and will be considered by the Court. Defendant's, however, are WARNED to comply with the local rules of this court or risk sanctions.

and Allison Knight, the parents of C.K. At approximately 11:00 a.m., Jack Knight's vehicle was allegedly struck by a semi-tractor/trailer driven by Dean Beckler, at the direction of Smithway Motor Xpress, Inc., which crossed the center line. Both Jack and Susan Knight allegedly suffered injuries and filed a negligence (and a loss of consortium) action in this Court captioned: *Jack Knight and Susan Knight v. Dean Beckler and Smithway Motor Xpress, Inc.*, Case No. 08-cv-4046. That matter currently is pending by consent before Magistrate Judge John A. Gorman. Discovery in that matter will close on June 30, 2010, a Final Pretrial Conference is set for December 15, 2010 and a Jury Trial is scheduled for January 3, 2011.

The matter before this Court was filed on April 15, 2010. Allison and Jack Knight II are suing individually and on behalf of their son, C.K., who also allegedly was injured as a result of the accident. C.K. seeks compensatory punitive damages against Defendants in his negligence action (Counts 1 through 4). As to the compensatory damages, C.K. alleges that he was physically injured, that he has suffered and will suffer pain, that he is permanently disabled, and that he will incur medical expenses as a result of the accident. He also states that he will be "hindered and prevented from attending to usual business and affairs and lost and will lose sums of money which [he] would have otherwise acquired and earned." As to the punitive damages, C.K. alleges that Defendant Beckler acted recklessly in that he was driving at an excessive speed with defective brakes and that he was fatigued in violation of federal regulations. C.K. further alleges that Defendant Smithway Motor Xpress, Inc. (who may be liable under a *respondeat superior*

2

theory) acted recklessly by failing to conduct brake inspections and maintenance (also as required by federal regulations).

Allison and Jack Knight II have alleged claims pursuant to Illinois' Family Expense Act (Count 5 and 6), negligent infliction of emotional distress claims (Counts 7, 8, 11, and 12) and reckless infliction of emotional distress claims (Counts 9, 10, 13, and 14). Allison and Jack Knight II also seek both compensatory and punitive damages. Allison Knight asserts that she will incur expenses for the care and treatment of C.K. as a result of the accident and that she was prevented (and will be prevented) from her usual employment and that Defendants must reimburse them consistent with the state statute. Allison Knight further claims that she suffered emotional distress upon observing the accident involving C.K., the injuries suffered by her in-laws and C.K., and because of a belief that C.K. had died. Jack Knight II also alleges that he suffered emotional distress as a result of observing the accident and witnessing the injuries of his parents and child.

In the motion to consolidate, Defendants seek consolidation of this action with case number 08-cv-4046. Plaintiffs have stated that they do not object.

In the Motion to Dismiss, Defendants argue that evidence in the previously filed case reveal that this Court lacks diversity jurisdiction because Plaintiffs' claims do not meet the requisite $75,000.01 jurisdictional amount. To support this argument, Defendants point to deposition testimony (which they do not attach to the Motion) showing that C.K. was an eleven year old boy whose only injuries as a result of the accident was a bruise to the abdomen, which was described as "nothing

major," and a sprain to his right little finger requiring a splint. Neither injury resulted in on-going complaints of pain and C.K. did not receive additional medical treatment (other than a hospital visit following the accident where an x-ray revealed no fracture and a splint was placed on the sprained finger). Neither Allison nor Jack Knight II received any medical or psychological treatment following the accident. Defendants further argue that there is no evidence that C.K. lost any wages or other compensation that would support his damages request. With respect to Allison and Jack Knight II's emotional distress claims, Defendants argue that neither Plaintiff has asserted any physical injury or impact and any such illness or injury "was so fleeting as to make it *de minimis*." Thus, Defendants argue that Plaintiffs' have failed to state a negligent infliction of emotional distress claim.

In response, Plaintiffs do not appear to dispute the minor nature of physical injury suffered by C.K., Allison, and Jack Knight, II. Rather, Plaintiffs assert that the evidence supports a prayer for punitive damages. To support this claim, Plaintiffs highlight evidence (which is not attached to the Response) that Defendant Beckler violated federal regulations, that he was distracted by a television and children in the cab, that the brakes of the tractor-trailer were defective, that regular brake inspections were not performed, that the tires were bald, and that he was driving at an excessive speed, 62 miles-per-hour, in light of the traffic conditions. Plaintiffs further argue that their allegations have sufficiently pled a claim for negligent infliction of emotional distress.

4

In their reply brief, Defendants also do not challenge the facts asserted by Plaintiffs with respect to the lack of maintenance of the tractor-trailer or the fact that Beckler was distracted and reckless. Rather, Defendants argue that even if Plaintiff's are entitled to punitive damages, such an entitlement must be congruent with an award of compensatory damages, which are minimal at best.

## DISCUSSION

### A. Standard

The Complaint alleges subject matter jurisdiction based on diversity. 28 U.S.C. § 1332. Therefore, the parties must be citizens of different states and the amount in controversy must exceed $75,000. When a defendant challenges subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), as in this case:

> A proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (citations omitted).

The facts in this matter are not in dispute: there is no question that C.K.'s injuries were minor, that he does not appear to have lost any income, and that he only incurred expenses related to one hospital visit. There also is no dispute that neither Allison nor Jack Knight II sought or incurred any medical treatment or expenses. Finally, there is no dispute that Defendant Beckler was distracted while driving,

5

that he was driving at an arguably excessive speed in light of the traffic conditions, and that his vehicle was not properly maintained or inspected as provided by federal law. The only question, then, is whether it is "legally certain" that Plaintiffs' damages (compensatory and punitive) are $75,000 or less.

Before answering this question it must be determined what claims Plaintiffs have. Defendants argue that Plaintiffs have not stated a claim with respect to the negligent infliction of emotional distress claims and C.K.'s claim for compensatory damages related to his inability to perform his regular occupation. In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view a complaint in a light most favorable to the plaintiff. *Williams v. Ramos*, 71 F.3d 1246, 1250 (7th Cir. 1995). The Court must accept all well-pleaded factual allegations and draw all reasonable inferences from those facts in favor of the plaintiff. *Richards v. Kiernan*, 461 F.3d 880, 882 (7th Cir. 2006). A plaintiff is not required to plead extensive facts, legal theories, or to anticipate defenses. *Massey v. Merrill Lynch and Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006). However, a plaintiff must "provide the grounds of his entitlement to relief" that are "more than labels and conclusion [] [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007) (citations and editing marks omitted). In particular, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### B. Damages related to C.K.'s "employment" and Plaintiffs' claims for negligent infliction of emotional distress

In the Complaint, Plaintiffs state that as a result of the accident, "C.K. was hindered and prevented from attending to usual business and affairs and lost and will lose sums of money which the Plaintiff would have otherwise acquired and earned" (Complaint ¶ 16). Defendants argue that there is no factual basis for a claim that C.K., an eleven-year-old boy, was unable to attend to his usual business affairs and will lose sums of money. The Complaint does not elaborate as to the "business" or employment that C.K. is engaged in and the Response to the Motion to Dismiss does not address this argument. The Court finds Plaintiffs' failure to respond to this argument an admission that the claim lacks merit. This Court further finds that the claim has no basis in fact and it is hereby STRICKEN.

Illinois law recognizes two types of victims of negligent infliction of emotional distress, direct victims and bystanders. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702-703 (7th Cir. 2009). A direct victim must allege basic negligence requirements: that the defendant owed him a duty, that the defendant breached that duty, and that the plaintiff suffered injuries proximately caused by the breach. *Parks v. Kownacki*, 737 N.E.2d 287, 298-297 (Ill. 2000). While a direct victim need not allege any physical injury or illness as a result of the emotional distress, *Corgan v. Muehling*, 574 N.E.2d 602, 609 (Ill. 1991), a direct victim is required to show a contemporaneous physical injury or impact in order to state a claim (i.e. the "impact" rule). *Allen v. Otis Elevator Co.*, 563 N.E.2d 826, 831 (Ill. App. Ct. 1990); *see also Seef v. Sutkus*, 562 N.E.2d 606, 608-609 (Ill. App. Ct. 1990). In *Rickey v.*

7

*Chicago Transit Authority*, the Illinois Supreme Court overturned a long-standing holding that a bystander also must allege that he suffered some physical impact or injury. 457 N.E.2d 1 (Ill. 1983). Instead, the Court adopted the "zone-of-physical-danger rule": "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress." *Id.* at 5. *Rickey*, however, did not overturn the impact rule with respect to direct victims alleging negligent infliction of emotional distress. *Corgan*, 574 N.E.at 604-606. In Illinois, then, the direct victim of negligent infliction of emotional distress proceeds under the impact rule whereas a bystander proceeds under the zone of physical danger rule. A plaintiff may, however, allege that he is both the direct victim of the negligent infliction of emotional distress as well as a bystander.

In Allison Knight's claim that Defendants negligently inflicted emotional distress, she asserts that she was in a vehicle two-and-a-half car lengths behind her in-laws' car (i.e. the vehicle actually struck by Defendant Beckler), that her vehicle made a panic stop upon viewing the accident, that she braced herself anticipating the impact "between the semi tractor trailer and the vehicle with her relatives inside," that her sunglasses "flew off of her head due to the movement of the vehicle she was in," that she witnessed the accident and the injuries resulting therefrom, that she believed that her child was dead, that she "suffered from emotional distress due to observing the injuries to her relatives at the scene of the collision", and that Defendants' negligence caused the emotional distress (Complaint ¶¶, 37-46).

Conspicuously absent from the Complaint is any allegation that Allison Knight suffered any contemporaneous impact or injury or any physical injury or illness as a result of any emotional distress she may have suffered. *See Lewis*, 561 F.3d at 702-703. In Jack Knight II's claim that Defendants negligently inflicted emotional distress, he alleges that he observed the accident and the injuries of his parents and child and that he suffered emotional distress as a result of Defendants' negligence (Complaint ¶¶ 54-64). Again, conspicuously absent from the Complaint is any allegation of a contemporaneous physical impact or injury or any physical injury or illness as a result of any emotional distress he may have suffered.

In the Response to the Motion to Dismiss, Plaintiffs state that Jack Knight II applied the brakes on his car and employed a "defensive maneuver" to avoid colliding with Defendants' truck and that, in addition to her sunglasses falling off, Allison Knight was thrown forward in the vehicle. Plaintiffs' Complaint, coupled with their response, appear to allege that they were both the direct victims of Defendants' negligent conduct and that they also suffered emotional disturbance as bystanders (that is, that they feared for their own safety). Plaintiffs then rely on *Buckley v. Jones Truck Lines, Inc.*, 778 F.Supp. 449 (N.D. Ill. 1991) and *Corgan* to argue that no "physical manifestations of their emotional distress" is necessary to recover either as a direct victim or a bystander." Plaintiffs' argument conflates the two types of claims for negligent infliction of emotional distress and is unsupported by the authority cited.

In *Corgan*, Penelope Corgan filed suit against her psychologist alleging, *inter alia*, that he negligently caused emotional distress when they engaged in a sexual relationship notwithstanding their doctor/patient relationship. The Illinois Supreme Court was faced with the issue of whether a direct victim must meet the "zone-of-physical-danger" rule articulated in *Rickey*. The Court first noted that prior to *Rickey*, all victims of the negligent infliction of emotional distress, direct and bystanders alike, must satisfy the "impact" rule: that "they suffered emotional distress and a contemporaneous physical injury or impact." *Corgan*, 574 N.E.2d at 604-605 (quotation marks and citation omitted). *Rickey*, however, abandoned the "impact" rule for the "zone-of-physical-danger" rule. The *Corgan* Court found, however, that *Rickey* was limited to cases involving bystanders:

> *Rickey*, therefore, abandoned the impact rule as it applied to bystanders and adopted the zone-of-physical-danger rule as the standard under which they can recover damages for negligent infliction of emotional distress. *Rickey* did not, however, define the scope of negligent infliction of emotional distress as it applies to direct victims. The court in *Rickey* was solely concerned with defining the parameters of *bystander* recovery. *Id.* at 605 (emphasis in original).

The Court went on to hold that general negligence principles govern claims made by direct victims, and that, unlike bystanders, a direct victim need not show a physical manifestation of his emotional disturbance. *Id.* at 609. While later opinions have held that expert testimony is not required to establish the negligent infliction of emotional distress, *Thornton v. Garcini*, ___ N.E.2d ___, 2010 WL 1714000 (Ill. 2010), the *Corgan* Court did not do away with the impact rule for direct victims alleging emotional distress. This conclusion is recognized by the Seventh Circuit

in *Lewis*. 561 F.3d at 702-703. Plaintiff have not provided any additional authority that Illinois Court's have abandoned the impact rule in cases involving direct victims of negligent infliction of emotional distress.

In this case, Plaintiffs have not alleged any contemporaneous impact or injury that would render them direct victims of Defendants' negligent infliction of emotional distress. Therefore, Plaintiffs have failed to state such a claim.

In *Buckley*, the district court recognized that *Rickey* required physical injury or illness (as a result of the emotional distress) in a bystander case. The district court stated, however, that the "extensive *dicta*" in *Corgan* "casts serious doubt on the vitality of the requirement that plaintiffs must show physical manifestations of their emotional distress under either the direct-impact rule or the zone-of-physical-danger rule in order to recover." *Id.* at 451. Even if *Buckley* were controlling authority (and even if the district court's statements were not merely *dicta*), the Seventh Circuit has continued to recognize the ruling in *Rickey* that bystanders must allege that they are within a zone of physical danger and that they incurred some physical injury or illness as a result of a defendant's negligence (and their subsequent emotional distress). *Lewis*, 561 F.3d at 702-703; *See also Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1381-1382 (7th Cir. 1993). As stated in *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020 (7th Cir. 1989), if a Plaintiff fails to allege that he was in the zone of danger, that he felt contemporaneous fear for his safety, and that he suffered some sign of physical injury or illness as a result of the emotional distress, his claim must be dismissed. *Id.* at 1023-1024; *See also*

*Siemieniec v. Lutheran Gen. Hosp.*, 512 N.E.2d 691, 707 (Ill. 1987); *Clark v. Children's Memorial Hosp.*, 907 N.E.2d 49, 57-58 (Ill App. Ct. 2009); *Rekosh v. Parks*, 735 N.E.2d 765, 771 (Ill. App. Ct. 2000).

Defendants' argument that Plaintiffs were not within the zone of danger is not well taken. It is undisputed that Plaintiffs were only 2 and a half car lengths behind the accident, that Jack Knight II applied his brakes, and that he maneuvered his car to avoid the accident. As such, Plaintiffs have sufficiently stated that they were in a zone of danger. However, the Complaint does not allege that either Allison or Jack Knight II feared for their safety or that they suffered any physical injury or illness as a result of their emotional disturbance. At most, the Complaint alleges that they were emotionally disturbed after seeing the accident involving their child and parents and the injuries that they suffered. In Response, Plaintiffs appear to state that they feared for their own safety, as evidenced by their rapid stop and avoidance maneuver; however, there is no allegation that they suffered from a physical injury or illness as a result of their emotional distress. Further, there is no assertion that their emotional distress was serious or severe. For these reasons, their claims for negligent infliction of emotional distress (Counts 7, 8, 11, 12) must be DISMISSED.

### C. Jurisdictional Amount

The only remaining question is whether damages on the remaining allegations meet the jurisdictional amount. As indicated above, Plaintiffs do not contest the minimal nature of the compensatory damages that they seek; rather, they argue that punitive damages are sufficient to meet the threshold amount. If punitive damages are recoverable under state law, they can be relied on to satisfy the amount in controversy requirement in order to confer diversity jurisdiction. *LM Ins. Corp. v. Spaulding Enterprises, Inc.*, 533 F.3d 542, 551 (7th Cir. 2008). In Illinois, punitive damages are appropriate where "the underlying tort is accompanied by aggravated circumstances such as wantonness, willfulness, malice, fraud, or oppression, or when the defendant acts with such gross negligence as to indicate a wanton disregard for the rights of others." *In re Estate of Hoellen*, 854 N.E.2d 774, 786 (Ill App. Ct. 2006). Punitive damages are awarded in addition to compensatory damages and are not allowed unless actual damages are shown. *Bachman v. General Motors Corp.*, 776 N.E.2d 262, 300 (Ill App. Ct. 2002).

There appears to be no dispute that Defendant Beckler acted in an arguably reckless and grossly negligent manner when he elected to drive his vehicle notwithstanding the fact that he did not rest for an appropriate time and that the vehicle was not properly maintained. There also appears to be no dispute that Defendant Beckler was distracted while driving by his children and a television and that he was driving at an unreasonable (even a grossly negligent and reckless) speed in light of the traffic conditions. Therefore, there is no dispute as to any fact

and this matter may not be dismissed unless it is legally certain that Plaintiffs cannot recover the jurisdictional amount. Defendants argue that it is legally certain because Plaintiffs' compensatory damages are *de minimis* and a punitive damages award that would exceed a single digit ratio would violate due process.

Punitive damages are limited. They are imposed as punishment, not as compensation, and to deter defendants and other persons from committing similar acts. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 415-416 (Ill. 2006). Such damages "are not favored in the law, and the courts must take caution to see that punitive damages are not improperly or unwisely awarded." *Id.* (quotation marks and citation omitted). In *State Farm Mut. Auto. Ins. Co. v. Campbell*, the Supreme Court reiterated that punitive damages are subject to substantive and procedural constitutional limitations. 538 U.S. 408, 416-417 (2003). Thus, "the Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *Id.* In reviewing an award of punitive damages, a court is guided by three considerations:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* at 418 (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)).

A court must "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426. With respect to the second factor, the Court indicated that while it cannot establish a "bright line ratio which a punitive damages award

cannot exceed," "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.* at 425.

Neither party has provided the Court with a specific dollar amount of compensatory damages that they believe a jury would award if Defendants are held liable. Plaintiffs also seem to aggregate their claims and assume that damages awarded to each of the Plaintiffs, when combined, can establish the jurisdictional amount. Such a contention is in error:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interest collectively equal the jurisdictional amount. *Troy Bank of Troy, Inc., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911).

It is clear that each of Plaintiffs' claims are separate and distinct and that they do not purport to enforce a "single title or right in which they have a common and undivided interest" such that their damages may be aggregated. However, this Court may exercise jurisdiction if at least one of the Plaintiffs' claims reach the jurisdictional amount. *See Exxon Mobile Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."). It must be determined, then,

whether at least one Plaintiff has claims that would reach the jurisdictional amount.

As indicated above, it is undisputed that C.K.'s actual damages are related to relatively minor injuries that resulted in minimal pain and that necessitated only one hospital visit where his hand was x-rayed and he received a splint for his finger sprain. There is no evidence to suggest that C.K. received any injury that has led to a disability, permanent or otherwise, or a loss of income or wages. Compensatory damages are limited, then, to the cost of his medical care and the pain and suffering he endured as a result of the accident. Defendants argue that C.K.'s damages would be so minimal that even if a proportional amount of punitive damages were awarded, his claim still would not exceed $75,000. Based on the record before the Court, this Court can only guess at what C.K.'s actual damages would be. This uncertainty, however, cuts against Defendants. C.K. *may* recover compensatory damages in excess of $10,000. He may also recover punitive damages within a single digit ratio that would make his claim worth more than $75,000. *See Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008) (approving a punitive damages award that was a 9:1 ratio to compensatory damages). Even if a jury were to award C.K. punitive damages beyond the single digit ratio encouraged by the Supreme Court, the facts of this case, showing gross negligence and reckless disregard for the safety of others, on the part of Defendants may cause a jury to award greater punitive damages; and, such an award may be approved upon review given the potential destruction and harm that Defendants' actions could have caused. *See TXO*

*Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460-461 (1993) ("It is appropriate to consider the magnitude of the *potential harm* that the defendants' conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred." (emphasis in original)).[2] Put another way, it is not *legally certain* that C.K. would recover $75,000 or less. In light of this conclusion it is unnecessary to examine the damages that are available to Allison and Jack Knight II.

## CONCLUSION

For the foregoing reasons, Motion to Consolidate (Doc. 14) is TAKEN UNDER ADVISEMENT and the Motion to Dismiss (Doc. 16) is GRANTED IN PART and DENIED IN PART.

This Court finds that it has subject matter jurisdiction over Plaintiffs' claims. However, Plaintiffs' claim that "C.K. was hindered and prevented from attending to usual business and affairs and lost and will lose sums of money which the Plaintiff would have otherwise acquired and earned" (Complaint ¶ 16) is hereby STRICKEN. And, Counts 7, 8, 11, and 12 are DISMISSED for the reasons set forth above.

---

[2] The Court is mindful that this case is factually distinguishable from the few facts that have been presented in the case at bar. However, it is necessary to point out that the ratio between compensatory damages and punitive damages is not the only factor to be considered by a Court reviewing such an award. A number of factors are to be considered. This Court has highlighted those articulated by the Supreme Court. Common law considerations include the degree of maliciousness of a defendant's actions in addition to his net worth. *Gambino v. Boulevard Mortg. Corp.*, 922 N.E.2d 380, 424 (Ill App. Ct. 2009).

This matter is set for a hearing on the Motion to Consolidate before Magistrate Judge Gorman and the undersigned, in person in Peoria, Illinois, on July 22, 2010 at 11:00 a.m.

Entered this 6th day of July, 2010

s/ Joe B. McDade

JOE BILLY McDADE
United States Senior District Judge